Merrimack, June 22, 1939. } No. 3065.

PERCY H. FLANDERS, *Adm'r v.* NEW HAMPSHIRE SAVINGS BANK.

PERCY H. FLANDERS *v.* SAME.

*Richard F. Upton, John H. Sanders* and *Robert W. Upton* (*Mr. Richard F. Upton* orally), for the plaintiffs.

*Demond, Sulloway, Piper & Jones* (*Mr. James B. Godfrey* orally), for the defendant.

ALLEN, C. J. This is a case of a tenement orally hired with no agreement in the terms of hiring for either the landlord or the tenant to keep it in repair. Without more being shown the landlord had no duty to repair. The plaintiffs, however, make the claim that the evidence sufficed to show the existence of the duty under the theory of retained control.

It is argued that the evidence warranted a finding that the tenants of the adjoining tenement had the right to share in the use of the steps on which the intestate fell. This position is untenable. The only common use shown was for a playground for the children living in the building. The stated terms of the plaintiff husband's tenancy included none providing for such use. Without expressing any view that the evidence would permit a finding of the use as an implied provision of the tenancy, if such a view may be assumed to be warranted, it would not help the plaintiffs. Whatever the area to which the assumed right of common use would apply, it would not extend to include the steps. Although the common use extended to them, the right to such use did not. The evidence demonstrates the plaintiff tenant's exclusive possession of them. Their use by others was within his control as a matter of his permission. Others used them as a privilege bestowed by him and not as a right granted by the landlord.

The steps are to be regarded as a part of the section of the building

rented to the plaintiff tenant, and not of the open land into which they extended. Belonging to the building as a component of it, they were a part of its structural completeness. By annexation to it they became more than an appurtenance. To say that the plaintiff tenant's section of the building was rented to him but that the steps leading from it were not, would be an anomalous proposition too irrational to accept.

The steps were as much a part of his tenement as was the garage which stood in the rear of his section of the building and of which he took and held sole possession. The fact that his wife when she hired the tenement in his behalf was not shown the open area in the rear, or the steps or the garage, is of negative significance in indicating the full comprisal of the tenement or in distinction between the tenement proper and easements appurtenant to it. Argument to the contrary is inconsistent with the asserted claim to exclusive possession of the garage.

The plaintiff tenant's right to exclusive use of the steps receives convincing confirmation from the following portion of his testimony. "Q. When you spoke of little children playing around on the steps, you didn't object to it, did you? A. No, sir. Q. You could have stopped it? A. I could have stopped them probably if I had been so minded. Q. But you were not so minded? A. No ... Q. You could have stopped them if you had wanted to but you are not that kind of a fellow? A. I am not that kind, no." He thus had more than a privilege of their use in common with others.

The further claim that retained control of the steps might be proved by the landlord's conduct in having the chimneys cleaned and snow and ice removed from the roof at one time and in having repairs made after the accident is also unsupported by the evidence.

In the relation of landlord and tenant, when no use in common with others is incident thereto and when there is no agreement for any retention of control, the tenant assumably has full and exclusive possession of the tenement. A building rented to a single tenant presumptively includes its exterior. "By the terms of the lease of 'a certain store ... ', the lessee acquired the right to the use and occupation of the outside of the walls belonging to that portion of the tenement which included the store. He took it as parcel of the demised premises proper, and not as a thing technically appurtenant thereto. The outside wall of a building leased or conveyed, passes by the lease or deed as much as the inside of the same wall. ... Now, it will hardly be contended that the outside wall of a store or house is

not essential for the reasonable and proper enjoyment of the interior of the building. The outer side of the wall is but one side of the same wall that has an inner side; and the removal of the wall removes both sides. If, then, a lessee or grantee may have the wall which he pays for, it would seem that he should be entitled to the use of it, not only for purposes indispensable to the occupation of the building, but also for any purpose of service or profit not inconsistent with the lawful and reasonable enjoyment of the property." *Riddle* v. *Littlefield*, 53 N. H. 503, 508, 509.

It is said that in general a landlord who has not assumed the duty or reserved the right to make repairs may not enter the premises for the purpose without the tenant's consent, and that if he does so, he is a trespasser. But the rule has its modifications, and there is authority for his right to enter to prevent waste subject to provision that the tenant's enjoyment of possession is not thereby disturbed. 36 C. J. 65, *s.* 687. This exception to the general rule has good reason for its support. It permits maintenance and upkeep of the property without incurring liability. It imposes no hardship on the tenant, while the landlord, and presumably also the tenant, are benefited. Whether or not the tenant fails to repair in breach of his duty, the landlord's interest to protect his property ought to give him the right when the exercise of the right does not interfere with the tenant's comfort and convenience. The right is an incident of the relation but is not a retained control enlarging the right into a duty.

It follows that repairs made by the landlord may be equivocal as evidence of retained control. They may indicate an initial control as much as one running with the lease from its commencement. They may indicate limited and temporary control as much as full and exclusive control. Particularly is this true when the tenant has permitted the entry and when the repairs are confined to special and infrequent instances. The right to repair does not logically show a duty to repair, nor, standing alone, does the exercise of the right logically denote a retention of control from the beginning. The repairs must be sufficient in extent and instances to justify the conclusion of retained control whereby the landlord may be charged with the duty to repair.

In *Bixby* v. *Thurber*, 80 N. H. 411, and in *Hunkins* v. *Company*, 86 N. H. 356, repairs were made before and after the accidents there in suit, and the evidence was held sufficient to show retained control as an incident of the relation at the time of the accidents. In the *Bixby* case the landlord's repairs tended to show that "the contract

was made by mistake or fraud, or that by design of the parties it misrepresents the true transaction" (*Ib.*, 418). In the *Hunkins* case the roof of the tenement, doubtfully accessible to the tenant, was repaired by the landlord a number of times before the accident and afterwards a new roof was laid. No evidence of the express terms of the tenancy was introduced.

The evidence here has no probative value to show retained control. The contract of hiring in its terms and implications reserved no control, and no claim of mistake or fraud or secret understanding of the parties is suggested. The occasion when the defendant had the chimneys and roof cleared is altogether indifferent to show its assumption of control beyond its instance. It was inferentially to avoid danger and prevent waste, but it was neutral to evince exterior control unlimited both in time and extent. It was not an act of repair, but rather the abatement of a condition menacing the condition of the building. As a single instance of conduct it showed nothing as an established incident of the relation. The situation in this aspect is parallel with that in *Kuchynski* v. *Ukryn*, 89 N. H. 400.

Nor did the repairs made after the accident, taken in connection with the work on the chimneys and roof already considered, signify in any reasonable measure that control had been retained. It can only be inferred that they were made with the consent of the tenants. They reflected no recognition by the defendant of a duty to repair or assumption of control equal in duration to the duration of the tenancies. The tenants were not excluded from making outside repairs. The plaintiff before the accident understood that he had the right to make them. And it may not be found that he understood that the defendant owed any duty to repair. He made, as he testified, no request that it repair the steps, giving as his reason for not himself repairing them before the accident his lack of time and testifying that he informed the defendant of the accident so that it might repair them if it chose to do so. The omission to request the repairs does not appear to be of any significance. A claim of the defendant's duty to repair would not thereby be shown while a request for them might have indicated it. And it is to be noted that the repairs made were not limited to the exterior of the building. The steps primarily, and the building as it needed repairs or as the tenants wanted them, were to receive attention.

Clearly, when the tenement was hired, no retained control could be found from anything said or done. There was then no incident of the relation imposing any duty of repair upon the defendant.

What was later done to indicate control signified that it was then first taken as much as it showed a control retained from the time the tenancy commenced. The evidence on which the plaintiffs rely permits no probability of a retained control stronger than that of a gratuitous service for the tenants.

Both instances of control were legal without a general retention of control. That before the accident was an exercise of the special right to prevent waste and to abate a dangerous condition. It denoted no comprehensive control, and it premised no duty. The instance after the accident was of permission. Its legality was not dependent upon control as an incident of the relation when the relation was created. Any finding of such control would be arbitrary.

To summarize, when the tenement was hired, no terms relating to repairs were made. As the landlord made no promise to repair, a finding of retained control can be made only if conduct is disclosed sufficiently impressive to overcome the presumption from silence or from an apparent agreement. The incidents of the relation arise from the actual terms and conditions of the letting. By subsequent conduct a landlord may be shown not to have parted with control. But the conduct here is of too indeterminate force to warrant the finding.

There being no sufficient evidence of the defendant's duty to repair, the issue of the intestate's negligence is unconsidered.

*Judgments for the defendant.*

BRANCH J., did not sit: the others concurred.