HENRY MARTEL [YVONNE R. MARTEL, ADMINISTRATRIX, SUBSTITUTED PLAINTIFF] v. WILLIAM J. MALONE ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and ROBERTS, JS.

Argued November 7—decided December 4, 1951

*Morton E. Cole,* with whom were *A. Arthur Giddon* and, on the brief, *Cyril Cole,* for the appellant (plaintiff).

*Frederick C. Maynard, Jr.,* with whom, on the brief, was *Warren Maxwell,* for the appellee (named defendant).

*Anthony M. Tapogna* appeared for the appellee (defendant The Saint Oronzo Society Turesi, Inc.).

BROWN, C. J.   The plaintiff brought this action to recover for personal injuries sustained by a fall alleged to have been caused by the defendants' negligence in failing to maintain a stairway in a reasonably safe condition.   The stairway, attached to the outside of a building owned by the defendant Malone, led from the ground to the second story, which was leased to the defendant St. Oronzo Society Turesi.   The jury rendered a verdict for the plaintiff to recover from the defendant Malone only.   On the plaintiff's motion, the court set aside the verdict in favor of the defendant society, and it has not appealed.   The court also set aside the verdict against the defendant Malone on the ground that there was no evidence to warrant the jury in finding that he retained control over the stairway. The plaintiff has appealed.

Upon the most favorable construction of the evidence in support of the plaintiff's case, the jury could have found these facts: On December 9, 1946, and for a number of years preceding, the defendant Malone, hereinafter called the defendant, owned a two-story building on the south side of School Street in Bristol. It was surmounted by a shallow A-roofed attic with windows at each end.   The first floor was occupied by two stores.   The second floor consisted of one room with an outside door on the west which afforded the sole means of access and egress.   There was a scuttle in the ceiling opening into the attic.   An open outside stairway with seventeen treads and a handrail on its westerly side was attached to the west wall of the building.   At the top of the stairway was a door opening into an inclosed landing, which was one step above the top tread and one step below the second floor.   The

door to the second-floor room was on the easterly side of the landing. The edge, or nosing, of the landing consisted of a narrow strip of one-inch board one and one-quarter inches wide which projected without support beyond the riser beneath and was nailed to the edge of the adjoining floor board. This constituted improper construction. Furthermore, the nosing would give when stepped upon and was cracked and somewhat decayed. By reason of this condition, which prevailed when the plaintiff fell and had existed for several years, the landing was not reasonably safe for use.

At the time of the plaintiff's fall and for some years before, the defendant society occupied the second floor as a club room under an oral month-to-month lease from the defendant at an agreed rental of $15 per month. On December 9, the plaintiff was engaged in carrying a 160-pound keg of beer up the stairs for delivery to the defendant society. After he had opened the door at the top of the stairs, and as he was stepping onto the landing, the nosing gave under him, causing him to lose his balance and fall down the stairs to the ground. He sustained the injuries complained of. Upon the case as claimed by the plaintiff, the question determinative of the appeal is whether upon these facts and all of the evidence the jury could properly have found that the defendant retained control of the stairway and landing.

An essential allegation in the complaint was that the defendant "controlled" the portion of the stairway and landing which encompassed the defect. *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 232, 175 A. 780. To establish liability, the burden of proving this rested upon the plaintiff. *Hannon* v. *Schwartz,* 304 Mass. 468, 470, 23 N. E. 2d 1022. Whether a landlord in such a case has reserved control of a stairway ordinarily can best be

determined by the intent of the parties as expressed in the terms of the lease. The only evidence of these terms in the instant case was the testimony of the defendant that the second floor, together with the stairway, was leased to the society at $15 per month, and that the society was to make such structural changes as it desired at its own expense. If it is assumed that the jury rejected this testimony in so far as it related to the stairway, as they could have, the record is left with no evidence of expressed terms in the lease that the stairway was included in the premises leased.

There was no evidence offered that the lease did not include the stairway. In the present case, however, whether it was included in the lease under the expressed terms thereof is not of controlling significance, because of the legal implications arising from the undisputed factual situation. Since the tenement leased was the second floor of the building and the only means of access or egress was this stairway, the right to use it was included in the lease as a matter of law. "The appurtenances of ingress and egress, essential to use and reasonably within the contemplation of the parties at the time of the leasing, are as much a part of the room conveyed as the room itself." 3 Thompson, Real Property (Perm. Ed.) § 1165; *Mayer* v. *Hazzard,* 10 Cal. App. 2d 1, 3, 51 P. 2d 189. Where the lease is of a part of the building, under "the general rule that those rights essential to the enjoyment of the demised premises . . . pass as appurtenant thereto the rights of ingress and egress pass to the tenant even though they are not specifically mentioned." Trickett, Landlord & Tenant in Pennsylvania (2d Ed.) p. 48; *Weigand* v. *American Stores Co.,* 346 Pa. 253, 257, 29 A. 2d 484; *Page* v. *Martini,* (Tex. Civ. App.) 293 S. W. 253, 255; 32 Am. Jur. 165; 51 C. J. S. 946. The language of the Supreme Court of New Hampshire, referring to steps

which served part of the building leased, and declaring that not only the right to use the steps but the steps themselves were included in the lease, is particularly apropos and holds true concerning the precise situation in the instant case: "Belonging to the building as a component part of it, they were a part of its structural completeness. By annexation to it they became more than an appurtenance. To say that the tenant's section of the building was rented to him but that the steps leading from it were not, would be an anomalous proposition too irrational to accept." *Flanders* v. *New Hampshire Savings Bank,* 90 N. H. 285, 288, 7 A. 2d 233.

While it is true that the fact that the stairway was a part of the premises leased is not conclusive that the defendant had surrendered his right of control thereof, that right, in the absence of an express or implied agreement to the contrary, did pass to the society by virtue of the lease. The burden of proving such an agreement rested on the plaintiff. And even if the stairway was not a part of the premises leased, it was essential for the plaintiff to sustain this burden of proof. "In the absence of agreement, expressed or implied, the tenant of an apartment acquires an exclusive right of occupancy and control of that apartment, and as incidental thereto of those parts of the structure which form an integral part of the tenement." *Aprile* v. *Colonial Trust Co.,* 118 Conn. 573, 579, 173 A. 237; *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co.,* 136 Conn. 234, 237, 70 A. 2d 126. An "integral" part of a tenement is a part "essential to completeness." Webster's New International Dictionary (2d Ed.). That the stairway in the present case was squarely within this definition is self-evident. There was no evidence of any express agreement. Whether there was an implied agreement presents a question of

fact, essentially dependent upon the question of intention, to be determined in the light of all of the significant circumstances. *Vinci* v. *O'Neill*, 103 Conn. 647, 651, 131 A. 408; *Miller* v. *Mutual Mortgage Co.*, 112 Conn. 303, 305, 152 A. 154; *Hurlburt* v. *Sherman*, 116 Conn. 102, 105, 163 A. 603.

Various facts may be evidence of an intention by the lessor to retain control and so of an implied agreement to that effect. Perhaps the most familiar factual situation of this nature is that of a common hall or stairway serving several leased tenements. See *Miller* v. *Mutual Mortgage Co.*, supra. Again, the "use actually made of the stairway and the circumstances attending it are also evidence of intention. *Farguet* v. *DeSenti*, 110 Conn. 367, 370, 148 Atl. 139; *Brandt* v. *Rakauskas*, 112 Conn. 69, 151 Atl. 315." *Miller* v. *Mutual Mortgage Co.*, supra, 306. Another such fact is the actual control exercised over the area in question. *Hurlburt* v. *Sherman*, supra. In this connection repairs made by the landlord may be evidence of such control. *Vinci* v. *O'Neill*, supra; *Killian* v. *Logan*, 115 Conn. 437, 439, 162 A. 30; *Shegda* v. *Hartford-Connecticut Trust Co.*, 131 Conn. 186, 188, 38 A. 2d 668. The record contains no evidence that this was a common stairway, that any use had ever been made of it other than by the members of the society and by the plaintiff in response to its order, or that the defendant had exercised any control over it by making repairs or otherwise. The plaintiff makes the contention, however, that, since the jury could have found that to repair the nosing would involve the temporary removal of a part of the landing from the "common wall" which extended "from the ground to the roof," this would sustain a further finding that the defendant retained control. This contention is without merit, since to assume that the defendant was bound to repair begs the question and, further,

the right to use and control this part of the outer wall was vested in the society as tenant of the second floor. *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co.*, 136 Conn. 234, 237, 70 A. 2d 126.

But one other claim of the plaintiff needs mention. This is that, considering the physical situation with relation to the attic, which was not leased to the society, and the testimony that the scuttle might be used by the defendant for access to the attic windows in connection with ventilation of the building or to the roof for making repairs, the jury would have been warranted in finding that the defendant retained control of the stairway as a means of getting to the scuttle. This suggests no more than a possibility at best. There was no evidence that any use ever was made of the scuttle or that any right was reserved to use it. It was brought out by cross-examination that an outside ladder could well have afforded an even better way of reaching the attic. The evidence might be construed as supporting an implied reservation in the defendant of a right of access to the scuttle. *Vinci* v. *O'Neill*, supra, 654. Exercise of a right so reserved would not, however, constitute an act of control. *Zorn* v. *Beal*, 134 Conn. 697, 701, 60 A. 2d 655. To reach the scuttle, the defendant would have had to pass through premises which were unquestionably in the exclusive control of the society. Under the circumstances, it cannot be held that either the possibility urged by the plaintiff or any other evidence in the case was sufficient to warrant the jury in finding that control of the stairway was retained by the defendant. The ruling of the trial court in setting aside the verdict was correct.

There is no error.

In this opinion the other judges concurred.