[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ONMOTION FOR SUMMARY JUDGMENT
On December 8, 1993, the plaintiffs, Karen G. Jahne and Richard Jahne, filed a six count substitute complaint against the defendants, Laz Parking Ltd. [Laz Parking], Cutter Lewis Street Associates [Cutter Lewis], Cutter Development Corp. [Cutter Development], Cutter Capitol Group, Inc. [Cutter Capitol], P.L.H. Realty Associates Limited Partnership [P.L.H. Realty], and Connecticut Galaxy Properties, Inc. [Galaxy Properties]. According to the substitute complaint, Cutter Development and Cutter Capitol were, at all relevant times, corporations that served as general partners of Cutter Lewis, a limited partnership. Additionally, according to the substitute complaint, Galaxy Properties also a corporation, was, at all relevant times, the sole general partner of P.L.H. Realty, a limited partnership.
The plaintiffs' action arises out of injuries allegedly sustained by Karen Jahne as a result of a slip and fall that allegedly occurred in a parking lot in Hartford, Connecticut, on or about January 16, 1993. In counts one and two of the substitute complaint, the plaintiffs allege that Laz Parking "owned, controlled, and/or maintained," in a careless and negligent fashion, the premises where Karen Jahne allegedly slipped and fell. In counts three and four, the plaintiffs allege that Cutter Lewis "owned, controlled, and/or maintained," in a careless CT Page 7627 and negligent fashion, the premises where Karen Jahne allegedly slipped and fell. In counts five and six, the plaintiffs allege that P.L.H. Realty and Galaxy Properties "owned, controlled, and/or maintained," in a careless and negligent fashion, the premises where Karen Jahne allegedly slipped and fell.
On March 8, 1994, P.L.H. Realty and Galaxy Properties filed a motion for summary judgment, as to counts five and six of the plaintiffs' substitute complaint, on the ground that they did not own, possess or control the parking lot where Karen Jahne allegedly slipped and fell. In support thereof, P.L.H. Realty and Galaxy Properties submitted a memorandum of law, a copy of the affidavit of Christopher J. Good, the Assistant Vice President in the Loan Department of Fleet National Bank of Connecticut [Fleet Bank], a copy of the lease entered into by Cutter Lewis and Laz Parking on December 28, 1990, a copy of the assignment of leases and rents entered into by Cutter Lewis and Fleet Bank on December 30, 1986, a copy of the assignment of leases and rents entered into by Cutter Lewis and Fleet Bank on April 25, 1989, and a copy of the assignment of loan documents entered into by Fleet Bank and P.L.H. Realty on September 7, 1991.
The plaintiffs, in opposition, filed a memorandum of law and a copy of Laz Parking's responses to the plaintiffs' request for admissions.
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm,224 Conn. 524, 530, 620 A.2d 99, cert. denied, ___ U.S. __, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). In making this determination, the evidence is viewed in the light most favorable to the nonmoving party. Connell v.Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990).
"To satisfy his burden the movant must make a showing CT Page 7628 that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Citations omitted.) Esposito v.Wethered, 4 Conn. App. 641, 644, 496 A.2d 222 (1985). "[T]he evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 579, 573 A.2d 699 (1990). Rather, the opposing party "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted.) Strada v. Connecticut Newspapers,Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). In reaching a decision on a summary judgment motion, "[t]he test is whether [the moving party] would be entitled to a directed verdict on the same facts." Batick v. Seymour,186 Conn. 632, 647, 443 A.2d 471 (1982).
In support of their motion for summary judgment, P.L.H. Realty and Galaxy Properties argue that, in order for them to be found liable for the injuries allegedly sustained by Karen Jahne, the plaintiffs must show that P.L.H. Realty and Galaxy Properties were in possession and control of the premises at the time of the alleged slip and fall. This, P.L.H. Realty and Galaxy Properties assert, the plaintiffs are unable to establish, because the various documents submitted to the court demonstrate that P.L.H. Realty and Galaxy Properties did not own, possess or control the parking lot where Karen Jahne allegedly slipped and fell. Specifically, P.L.H. Realty and Galaxy Properties argue that the lease entered into by Cutter Lewis and Laz Parking clearly establishes that Cutter Lewis was the owner of the subject parking lot at the time of the alleged slip and fall, and that Laz Parking was in possession and control of the subject parking lot at that time.
In response, the plaintiffs contend that the various documents submitted by the parties establish that a number of genuine issues of material fact exist regarding who owned, possessed and/or controlled the subject premises. For this reason, the plaintiffs argue, summary judgment should not be granted at this time. CT Page 7629
The documents submitted by the parties, in regard to the motion for summary judgment presently before the court, establish the following additional facts. On December 30, 1986, prior to the alleged slip and fall, Cutter Lewis assigned its leases and rents in the subject property to Fleet Bank [Assignment One]. Exhibit C, attached to the memorandum of law in support of the motion for summary judgment. Thereafter, on April 25, 1989, Cutter Lewis again assigned its leases and rents in the subject property to Fleet Bank [Assignment Two]. Exhibit D, attached to the memorandum of law in support of the motion for summary judgment.
On December 28, 1990, Cutter Lewis entered into an agreement with Laz Parking whereby Cutter Lewis leased the parking lot to Laz Parking [Lease Agreement]. Exhibit B, attached to the memorandum of law in support of the motion for summary judgment.
Subsequently, on September 17, 1991, Fleet Bank entered into an agreement with P.L.H. Realty whereby it did "grant, bargain, sell, assign, transfer and set over unto P.L.H. Realty Associates" certain loan documents [Assignment Three]. Exhibit E, attached to the memorandum of law in support of the motion for summary judgment. The two documents so assigned by Fleet Bank to P.L.H. Realty were Assignment One and Assignment Two.
On July 24, 1993, the City of Hartford foreclosed on the property wherein the subject parking lot is located, due to Cutter Lewis' failure to pay city real estate taxes.
"The common law of the State of Connecticut has generally upheld the proposition that the possession and control of the land, not its ownership, determine liability for any injuries incurred because of defects on the land." (Citation omitted; internal quotation marks omitted.)Plourde v. King, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 354282 (December 6, 1993, Hennessey, J.). See also Mack v.Clinch, 166 Conn. 295, 296, 348 A.2d 669 (1974) ("liability can be predicated upon negligence in the control and possession of premises, as opposed to mere ownership thereof"). CT Page 7630
"In the absence of a statute or covenant to the contrary, the lessor does not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the lessee." Thomas v. Roper,162 Conn. 343, 348, 294 A.2d 321 (1972). Where such a statute or covenant does exist, however, the landlord may retain control over and/or the duty to repair or maintain certain parts of the leased premises. See, e.g., Pollackv. Gampel, 163 Conn. 462, 468, 313 A.2d 73 (1972) (where landlord retains control of portion of leased premises, "landlord must use reasonable care to keep that portion of the premises in a reasonably safe condition").
"The word `control' . . . refers to the power or authority to manage, superintend, direct or oversee." (Citations omitted.) Panaroni v. Johnson, 158 Conn. 92,98, 256 A.2d 246 (1969). "Whether control of the premises has been retained by the lessor is determined by examining the terms of the lease." Charest v. Burger King Corp. ,8 CSCR 369, 370 (March 3, 1993, Aurigemma, J.), citing Martelv. Malone, 138 Conn. 385, 388, 85 A.2d 246 (1951). "A lease is a contract . . . and its construction presents a question of law for the court." (Citations omitted.)Robinson v. Weitz, 171 Conn. 545, 551, 370 A.2d 1066
(1976).
 Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue.
Panaroni v. Johnson, supra, 158 Conn. 98.
The relevant portions of the Lease Agreement dated December 28, 1990, whereby Cutter Lewis leased the parking lot to Laz Parking, provide as follows:
3. Maintenance of Premises.
 Tenant shall, during the term of this lease, provide at its sole cost and expense, allCT Page 7631 necessary services to the Demised Premises, including the sidewalks and entranceways thereon. Such services shall include cleaning of refuse, weeds, litter and snow removal.
4. Improvements.
 Tenant shall not make any improvements or alterations on the Demised Premises without the prior written consent of the Landlord. Upon such written consent, which shall not be unreasonably withheld or delayed, Tenant may, at its sole expense, subject to the conditions set forth hereinafter, make certain improvements or modifications to the Demised Premises as deemed necessary by the Tenant for the efficient operation of a parking facility. Landlord hereby agrees to let Tenant make such improvements which include the grading and surfacing of the Demised Premises, installation of lighting and signage.
(Emphasis added.)
In counts five and six of their substitute complaint, the plaintiffs allege that Karen Jahne slipped, fell, and sustained injuries "as a result of the dangerous and defective condition of the pavement of the parking lot . . . ." The plaintiffs further allege that Karen Jahne's injuries were caused by the carelessness and negligence of P.L.H. Realty and Galaxy Properties in one or more of the following ways:
 a. in that the parking lot was covered with snow and ice and, hence, was unsafe for users of the same; and/or
 b. in that no sand, salt, or abrasive materials, had been placed on the surface of the parking lot; and/or
 c. in that the parking lot had a depressed broken area adjacent to the parking lot attendant's booth such that it was rendered hazardous and dangerous to lawful users of the same; and/or CT Page 7632
 d. in that the parking area lacked adequate and/or proper lighting and hence was unsafe for users of the same; and/or
 e. in that the defendant . . . failed to repair
the dangerous and/or defective conditions of the parking lot, although they could have and should have done so in the exercise of reasonable care; and/or
 f. in that the defendant . . . allowed or permitted the aforementioned hazardous conditions to exist for an unreasonable period of time, yet they took no measures to remedy or correct the same; and/or
 g. in that the defendant . . . failed to provide adequate warnings to the plaintiff of said dangerous condition.
 h. in that the defendant . . . knew, or in the exercise of reasonable care and inspection, should have known of the aforementioned condition and should have taken measures to remedy and correct the same, but this they carelessly and negligently failed to do.
(Emphasis added.)
The lease entered into by Cutter Lewis and Laz Parking does not establish whether Cutter Lewis or Laz Parking was to maintain exclusive control over the subject parking lot. By the terms of the lease, Laz Parking did assume the duty to provide, at its own cost and expense, all necessary services to the premises, including the sidewalks and entranceways thereon. Additionally, the lease provides that one of the services Laz Parking was to be responsible for was "snow removal," which is a duty alleged in the plaintiffs' substitute complaint as having been performed carelessly and negligently.
However, the lease is unclear regarding who was to be responsible for maintaining and/or repairing the subject premises in other respects. For example, although the CT Page 7633 lease states that Cutter Lewis "agrees to let" Laz Parking make improvements to the subject premises, including the "grading and surfacing" of the premises and "installation of lighting" upon the premises, the lease does not provide that Laz Parking must make these improvements or maintain the premises in this manner. Moreover, the lease specifically provides that Laz Parking "shall not make any improvements or alterations on the Demised Premises without the prior written consent of the Landlord." Genuine issues of material fact exist regarding whether Cutter Lewis or Laz Parking was to be responsible for grading and surfacing the parking lot and installing proper lighting in the parking lot, which are duties alleged in the plaintiffs' substitute complaint as having been performed carelessly and/or negligently.
Because genuine issues of material fact exist regarding whether Cutter Lewis or Laz Parking exercised control over the parking lot at the time of Karen Jahne's slip and fall, it follows that genuine issues of material fact also exist regarding whether P.L.H. Realty and Galaxy Properties had a duty to maintain or control the subject premises. P.L.H. Realty and Galaxy Properties concede that "P.L.H. effectively replaced Cutter as a party to the lease agreement with Laz," because the leases and rents assigned by Cutter Lewis to Fleet Bank, in Assignment One and Assignment Two, were later assigned by Fleet Bank to P.L.H. Realty, in Assignment Three, and because "P.L.H. collected rents from Laz, abided by the lease, and left Laz in control of the premises, until the date the City of Hartford foreclosed on the property." (Emphasis added.)
Assignment One and Assignment Two, wherein. Cutter Lewis assigned leases and rents to Fleet Bank, provide that the assignee, Fleet Bank, is to have "all of the right, title and interest of Assignor in and to: all leases . . . now or hereafter existing with respect to any portion or portions of the Premises" and "all rents . . . due or payable and to become due or payable . . . by virtue of the Assigned Leases. . . ." Pursuant to these two assignments, however, no demand for rents and other payments was to be made by the assignee, Fleet Bank, unless and until the assignor, Cutter Lewis, "default[ed] under the [n]ote. . . ." Additionally, pursuant to the two assignments, the assignee, Fleet Bank, was entitled to CT Page 7634 enter and take actual physical possession of the premises, without having to commence any foreclosure action, and do the following:
 3.1.2.1. manage and operate the Premises or any part thereof;
 3.1.2.8. make such repairs and alterations to the Premises as Assignee may, in its reasonable discretion, deem proper;
 3.1.2.10. generally do, execute, and perform any other act, deed, matter or thing whatsoever that ought to be done, executed and performed in and about or with respect to the Premises, as fully as Assignor might do;
 provided, however, that this Assignment shall in no respect operate to place upon Assignee any responsibility or obligation to take any of the above actions or any action whatsoever with respect to the operation, control, care, management or repair of the Premises and that any action taken or failure or refusal to act by Assignee under this Assignment shall be at Assignee's election and without any liability on its part. . . .
(Emphasis added.)
Pursuant to Assignment Three, wherein Fleet Bank assigned, inter alia, Assignment One and Assignment Two to P.L.H. Realty, P.L.H. Realty acquired "the entire interest of FNB-CT [Fleet Bank] in the loan evidenced and secured by the Loan Documents," and the right to "exercise all rights and remedies of FNB-CT [Fleet Bank] under the Loan Documents as fully as FNB-CT [Fleet Bank] might or could do if this Assignment was not executed."
Genuine issues of material fact exist in the present matter regarding the three assignments discussed above. For example, a genuine issue of material fact exists regarding whether Cutter Lewis defaulted under the notes, thereby triggering Fleet Bank's right, under Assignment One and Assignment Two, and/or P.L.H. Realty's and Galaxy CT Page 7635 Properties' right, under Assignment Three, to take possession of the property and perform any or all of the actions delineated above. Additionally, a genuine issue of material fact exists regarding whether, in fact, P.L.H. Realty and Galaxy Properties actually performed any or all of these actions.
Finally, a genuine issue of material fact exists regarding whether the lease entered into by Cutter Lewis and Laz Parking was even in effect on January 16, 1993, the date that Karen Jahne allegedly slipped and fell. P.L.H. Realty and Galaxy Properties have submitted the affidavit of Christopher Good, an employee of Fleet Bank, which states that said lease "was in full force and affect" at that time. The plaintiffs, however, have submitted Laz Parking's responses to plaintiffs' request for admissions, wherein Laz Parking specifically denies that said lease was in effect on January 16, 1993.
The various documents presented by the parties, when read in conjunction with the plaintiffs' substitute complaint, illustrate that genuine issues of material fact exist regarding who possessed, maintained and/or controlled the parking lot at the time of the alleged slip and fall. A reading of the lease, along with the two assignments of leases and rents to Fleet Bank and the assignment of loan documents to P.L.H. Realty, cannot be said to resolve definitely or expressly the issue of control. Accordingly, the motion for summary judgment filed by P.L.H. Realty and Galaxy Properties is denied.
Mary R. Hennessey, J.