[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This is a negligence action arising out of a slip and fall on ice and snow on property known as Woodbridge Elderly Housing located at 23 Lucy Street, Woodbridge, Connecticut, on February 2, 1993.
The first count is directed to Woodbridge Elderly Housing (W.E.H) and alleges the defendant is liable to the plaintiff for her injuries in that the defendant failed to remove ice and snow from common areas of the property and that this failure caused the plaintiff's fall. CT Page 4074-H
The defendant, W.E.H, has submitted an affidavit executed by the defendant's general partner, Mr. Capone. This affidavit indicates that on the date of the fall and injuries a Management Agreement existed between the defendant and plaintiff's employer, an intervening plaintiff. The defendant asserts that under the terms of that agreement the plaintiff's employer, Gibson Associates, Inc., was responsible for maintaining the area where the fall occurred. Paragraph 13 of the agreement requires Gibson Associates to "cause the development to be maintained in a good, safe, and sanitary condition and . . . including but not limited to . . . ground care." In the agreement "development" is defined to include all common areas including the location of the fall. The defendant maintains that the agreement placed all responsibility for snow and ice removal on Gibson not the defendant. In fact, Gibson in fulfillment of its responsibilities, hired Mr. Gilbert of Green Magic Landscaping to remove snow and ice from common areas. Green Mountain Landscaping is a co-defendant in this action. Interestingly, Mr. Capone is also the Vice-President and Secretary of Gibson Associates but there is no claim now being made that Gibson Associates is somehow the alter ego of the defendant or that the fact that Mr. Capone held that position in Gibson made Gibson Associates in effect subject to the direction and control of the defendant W.E.H.
The plaintiff does not dispute the fact that the Management Agreement referred to was in effect on the date of the slip and fall. The plaintiff does not dispute that Gibson Associates pursuant to the agreement hired Mr. Gilbert to perform snow and ice removal.
The defendant, Woodbridge Elderly Housing, has filed a motion for summary judgment. The dispute between the parties does not appear factual in nature but rather is based on legal conclusions they attempt to draw from the facts.
The law is clear that liability for injuries based on defective premises or hazardous conditions such as ice and snow accumulations is not based on ownership but rather upon possession and control. As said in Wright, Fitzgerald, and Ankerman, Connecticut Law of Torts, Second, § 46 at p. 108 (1991): "It is the possession of land that imposes liability for injuries rather than the ownership of land . . . because the person in possession is in a position of control and is best able to prevent harm." Also see Farlow v. Andrews Corp., 154 Conn. 220,225 (1966). CT Page 4074-I
In this area the prevention of harm is the chief concern so that control is the key factor. Possession is an indicia of who has control, thus Wright says "the person in possession is in a position of control and is best able to prevent harm."
In the landlord-tenant context, since possession or control is the basis for liability, a landlord not in possession is normally not liable to persons injured on the leased premises. Wright, § 54, page 139; Smith v. Housing Authority, 144 Conn. 13,16 (1956). If the landlord retains control over any portion of the property, the landlord has a duty to keep that portion reasonably safe Fogarty v. M.J. Beuchler Sons Inc., 124 Conn. 325,331 (1938). Similarly as pointed out in Charest v. BurgerKing Corp., 8 CSCR 369, 370 (1993), a lessor retains no rights over leased premises except those that are expressly reserved by the lease State v. Schaeffel, 4 Conn. Cir. 234, 247 (1966). Also, as Charest notes, whether control has been retained by the lessor is determined by examining the terms of the lease. Martel v.Malone, 138 Conn. 385, 388, 389 (1951).
Under traditional landlord-tenant law, a landlord retains no rights over leased premises unless there is some reservation of control over the premises or a portion of them pursuant to an agreement with the tenant. A landlord can be sued and arrested for trespass for unauthorized entry on the tenant's property; strictly construed statutes determine when and how a tenant can be evicted from the premises.
But Gibson Associates was not a lessee of the defendant with all the rights to the premises such a status gives to the lessee even as against the lessor. Assuming Gibson can be categorized as an agent of the defendant, why wouldn't the ordinary liabilities for the act of the agent run to the principal for any injured party? If an owner of property could escape liability for injuries suffered due to negligent maintenance simply by signing a maintenance agreement the results could be quite unfair to injured parties. In fact, it is hard to conceive of a management agreement that would change the principle-agency relationship in such a way that the landlord is no longer in "control" of the premises for liability to third party purposes. This management agreement is not successful in any event in precluding such control by the defendant. Throughout Gibson Associates is referred to as the "agent" of the defendant which is described as the "owner". Even on so basic a matter as enforcement of the CT Page 4074-J leases the agent, Gibson, may bring summary process actions but the agent shall keep the owner and the state financing authority informed of such actions and in such actions the agent, Gibson, is to follow such "instructions as the owner may proscribe" (para. 12). The "Management and Repair" clause, paragraph 13, in its complete and relevant language on this subject, says:
 ". . . and Agent otherwise shall maintain the Development at all times in a condition acceptable to Owner and the Authority, including, but not limited to, performance of cleaning, painting, decorating, plumbing, carpentry, grounds care and other such maintenance and repair work as may be necessary." (emphasis added)
The subsections of paragraph 13 reserve owner control over a variety of maintenance and repair activities. Paragraph 15 gives the owner the right to demand that the agent have sufficient people on the premises to perform its duties under the agreement. Paragraph 23 explicitly states that the obligations of the Gibson Associates under the agreement — which would include the paragraph 13 obligations as to maintenance and repair — "shall be performed as agent of Owner. . . ." The agent in paragraph 24 agrees to indemnify the owner, defend it and save it harmless from all suits brought against the Owner for liability for damages and injuries if such injury resulted from the agent's negligence or failure to perform its responsibilities under the agreement plan. As between themselves the parties do not appear to have thought this agreement would bar injured third parties from advancing a claim against the owner-defendant
Gibson Associates was nothing more than agent of the owner-defendant and the latter by the terms of the agreement retained sufficient control to make it liable to third parties injured by the negligent actions of Gibson Associates or its subcontractors for unsafe conditions on the land. The motion for summary judgment is denied.
Corradino, J. CT Page 4074-K