On July 12, 1996, the plaintiff, Dominic Valentas, filed a one count negligence complaint against the defendant, Toys "R" Us, Inc. (Toys "R" Us). Valentas alleges that on August 29, 1994, he sustained injuries and losses when he stepped off a sidewalk curb and fell to the ground while a business invitee on the premises of Toys "R" Us in East Haven, Connecticut. Valentas alleges that Toys "R" Us controlled and maintained the area in which the plaintiff slipped and fell, that Toys "R" Us knew or should have known about the dangerous condition that caused him to fall, and that Toys "R" Us' negligence of allowing and permitting the area to be and remain in a dangerous and unsafe condition caused his injuries. CT Page 14541
On September 23, 1996, Toys "R" Us filed an apportionment complaint against Christopher Road Associates (CRA), the landlord-lessor of the premises occupied by Toys "R" Us and where Valentas plaintiff allegedly slipped and fell. In the apportionment complaint, Toys "R" Us alleges that pursuant to the lease agreement entered into with CRA on June 13, 1984, that CRA, as landlord, agreed to supervise, repair, and maintain all common areas, which included sidewalks, curbs, and parking areas, of the leased premises.
On October 15, 1996, Valentas filed a complaint against CRA claiming damages for any liability attributable to CRA.
On November 25, 1996, Toys "R" Us filed a two count crossclaim against CRA. In count one for active/passive indemnification, Toys "R" Us alleges that it is entitled to indemnification from CRA for monies that it may be held liable to pay and for reasonable attorneys' fees because CRA was in possession and control of the common area where the plaintiff allegedly fell. In count two for contractual indemnification, which is the subject of the present motion, Toys "R" Us alleges that "[p]ursuant to the Lease Agreement and as a result of Section 11.02 or Article XI of the Lease Agreement, Christopher Road agreed to indemnify and save tenant harmless from and against any and all claims, including reasonable attorneys' fees, incurred as a result of any occurrence in or upon the shopping center or any part thereof, or occasioned wholly or in part by any act or omission of the landlord. . . ." (Crossclaim, Count Two, ¶ 12). Toys "R" Us further alleges that "[a]s a result of the contractual provisions contained in the Lease Agreement, Toys "R" Us, Inc. is entitled to indemnification from and entitled to be held harmless by Christopher Road from and against all losses incurred as a result of plaintiffs lawsuit and/or arising out of plaintiffs claim. . . ." (Crossclaim, Count Two, ¶ 13.)
On July 7, 1997, Toys "R" Us moved for summary judgment against Valentas and CRA. As to CRA, Toys "R" Us moved for summary judgment on the grounds that CRA owed it a duty to indemnify pursuant to the lease agreement. On November 10, 1997, the court, Gray, J., granted Toys "R" Us summary judgment as to the plaintiff, but did not rule on the indemnification issue.
On February 20, 1998, Toys "R" Us filed a second motion for CT Page 14542 summary judgment and supporting memorandum of law only as to liability on the second count of contractual indemnification in its crossclaim against CRA. Toys "R" Us moved for summary judgment on the ground that there is no genuine issue of material fact in that the lease agreement clearly states that CRA must indemnify and hold it harmless, and it is entitled to judgment as a matter of law. CRA timely filed a memorandum in opposition to the motion for summary judgment. The court, Zoarski, J., granted summary judgment in favor of Toys "R" Us on the contractual indemnification count of the crossclaim as articulated in the memorandum of decision filed October 28, 1998.
On February 16, 1999, CRA filed a motion to reargue the summary judgment matter on the grounds that it did not receive notice of any orders in the matter, that CRA received a copy of the court's memorandum of decision late, and that the court improperly interpreted the contractual indemnification provision of the lease agreement. The court, Zoarski, J., granted CRA's motion to reargue, and rearguement on the summary judgment motion was heard on August 23, 1999.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998). "[T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted). Harvey v. Boehringer Ingelheim Corp. , CT Page 1454352 Conn. App. 1, 5, 724 A.2d 1143 (1999).
Toys "R" Us argues that, given the clear and unambiguous language of the lease agreement, there is no genuine issue of material fact that CRA had control over the common area where the plaintiff was allegedly injured, that CRA had covenanted to indemnify Toys "R" Us for all claims and reasonable attorneys' fees incurred as a result of any occurrence in the shopping center or part thereof, or occasioned wholly or in part by any act or omission of the landlord, and that Toys "R" Us is thus entitled to summary judgment as a matter of law. Toys "R" Us argues that the lease agreement should not be construed as an insurance contract of adhesion because the two contracting parties are sophisticated businesses.
In its opposing memorandum, CRA argues that it has no contractual duty to indemnify Toys "R" Us for Toys "R" Us' own negligence and that the lease agreement expressly excludes indemnifying the tenant for losses resulting from its own negligence. CRA argues that claims arising from the tenant's negligence are excepted from indemnification under the lease agreement. CRA analogizes the indemnification provision in the lease agreement to an agreement to defend in an insurance contract in that if the complaint does not allege a covered offense, then the insurer has no duty to defend. As such, CRA argues that Valentas' claim against Toys "R" Us was for the tenant's non-covered negligence and, therefore, CRA has no duty to indemnify.
On April 6, 1998, Toys "R" Us filed a supplemental memorandum. Toys "R" Us argues, pursuant to the court's grant of summary judgment in favor of Toys "R" Us against the plaintiff, that Toys "R" Us was found as a matter of law not to be in control of the common area in which the plaintiff was allegedly injured because the area was under the control of CRA. Toys "R" Us further argues that the grant of summary judgment in its favor on the ground that it did not owe the plaintiff a duty of care triggers the indemnification provision at issue in the motion at bar.
"[W]here there is definite contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Gateway Co. v. DiNoia, 232 Conn. 223, 229, 654 A.2d 342
(1995). "When the plain meaning and intent of the language is CT Page 14544 clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) Id., 232. "[We] will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Water Way Properties v. Colt's Mfg.Co., 230 Conn. 660, 667-68, 646 A.2d 143 (1994). "Every provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements. Connecticut Co. v. Division 425,147 Conn. 608, 617, 164 A.2d 413 (1960); see also Ceci v.National Indemnity Co., 225 Conn. 165, 175-76, 622 A.2d 545
(1993). "Liability for an injury due to defective premises does not depend on title, but on possession and control." Farlow v.Andrews Corp. , 154 Conn. 220, 225, 224 A.2d 546 (1966).[1]
"Whether a landlord in such a case has reserved control of [an area] ordinarily can best be determined by the intent of the parties as expressed in the terms of the lease." Martel v.Malone, 138 Conn. 385, 388-89, 85 A.2d 246 (1951); see Panaroniv. Johnson, 158 Conn. 92, 98, 256 A.2d 246 (1969).
In examining the lease agreement, Article XI deals with the indemnification agreements between CRA and Toys "R" Us. Under § 11.01, the "Tenant covenants to indemnify and save Landlord harmless (except for loss or damage resulting from the negligence of Landlord, its agents or employees) from and against any and all claims, actions, damages, liability and expense, including reasonable attorneys' fees, in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence, in or upon the Demised Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants or licensees therein." (Lease Agreement, pp. 25-26.) "Demised Premises" is defined in the lease's Preliminary Statement as the store and truck loading areas. Under § 11.02, the "Landlord covenants to indemnify and save Tenant harmless (except for loss or damage resulting from the negligence of Tenant, its agents or employees) from and against any and all claims, actions, damages, liability and expense, including reasonable attorneys' fees, in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Shopping Center or any part thereof, or occasioned wholly or in CT Page 14545 part by any act or omission of Landlord, its agents, contractors, employees, servants or licensees therein." (Lease Agreement, p. 26.) "Shopping Center" is described as "certain real property consisting of approximately 11.957 acres of land with approximately 106,875 square feet of retail store improvements. . . ." (Lease Agreement, Preliminary Statement.) Under Article I, § 1.01, the landlord granted the tenant the non-exclusive right to use the sidewalks and driveways and other similar areas for common use by the tenant and other occupants of the shopping center. Article VI, Common Areas, § 6.01(a) grants tenant a non-exclusive easement over common areas, and § 6.01(b) defines "Common Areas" to include without limitation the sidewalks, parking areas, landscaped areas, lighting facilities and equipment intended for use by the tenant's business invitees. Section 6.03(a) provides that the "[l]andlord shall cause to be supervised or shall supervise, operate, manage, repair, replace and maintain all of the Common Areas so as to keep such areas at all times in a safe, sightly, good and functional condition clean and free from refuse and rubbish. . . ." (Lease Agreement, p. 20.)
The foregoing contractual provisions, in their plain and unambiguous language, demonstrate that the lease agreement defines the place in which the plaintiff fell as a "common area" over which Toys "R" Us and its business invitees had a non-exclusive easement and that CRA covenanted to supervise, repair, and maintain in a safe condition. "[T]he duty to maintain an easement is with the owner of the easement (also known as the dominant estate); Holt v. Wissinger, 145 Conn. 106, 112,139 A.2d 353 (1958); Earley v. Hall, 89 Conn. 606, 611, 95 A. 2
(1915). . . ." Esposito v. Toys "R" Us, Superior Court, judicial district of New Haven, Docket No. 382699 (December 26, 1997,Levin, J.).
In the procedurally and factually similar case of Esposito v.Toys "R" Us, Superior Court, judicial district of New Haven, Docket No. 382699 (December 26, 1997, Levin, J.), aff'd on reargument, (June 11, 1998, Levin, J.), the court granted tenant Toys "R" Us summary judgment on its contractual indemnification count. The Esposito court based its decision on the ground that pursuant to the lease agreement, CRA, as landlord, maintained control over the common area in which the plaintiff was injured and had the duty to maintain that area. The court held, therefore, that Toys "R" Us, as tenant, was entitled to CT Page 14546 indemnification. See id. Notably, the lease agreement in Esposito
contains the exact same language as the lease agreement in the instant case. In light of the foregoing authority on contract interpretation and persuasive precedent on indemnification, CRA, as lessor, pursuant to the plain and unambiguous language in the lease agreement, retained control over the common area in which the plaintiff was allegedly injured and that CRA covenanted to maintain such area in a safe condition. As such, no genuine issues of material fact exist as to whether CRA was in control of the area or had a duty to maintain the area and, therefore, Toys "R" Us is entitled to summary judgment as a matter of law.
Because there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law, Toys "R" Us' motion for summary judgment on the contractual claim for indemnification is granted and, consequently, CRA must indemnify and hold Toys "R" Us harmless for its reasonable attorneys' fees, which pursuant to its counsel's submitted affidavit are $2,302.93.
Howard F. Zoarski Clerk of the Superior Court