CATHERINE PANARONI *v.* A. ALLEN JOHNSON ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

94

Argued February 5—decided April 1, 1969

*James O. Shea,* for the appellants (defendants).

*Charles G. Albom* and *Albert R. Annunziata,* with whom, on the brief, was *Donald G. Walsh,* for the appellee (plaintiff).

COTTER, J.  The plaintiff brought this action to recover damages for personal injuries sustained in a fall down an unenclosed outside stairway which the plaintiff, a tenant, alleged had been retained in control of the defendants, her landlords.  The jury returned a verdict of $65,000, and the defendants have appealed from the denial of their motion to set aside the verdict and from the judgment.

Essentially, the defendants claim that the stairway leading solely to the tenement of the plaintiff was wholly demised under the written lease and therefore was under her control so that liability

under the circumstances was not a question of fact for the jury; that the court erred in ruling that a clause in the written lease exculpating the landlord from liability to the tenant for injuries due to disrepair or defective conditions on the premises was void as against public policy; that the tenant's knowledge of the defect barred her recovery; that evidence of oral conversations at or about the time of the leasing to vary the language of the lease was inadmissible; that instructions to the jury concerning the plaintiff's earning capacity of $100 per week were erroneous; and that a refusal to grant the defendants a directed verdict constituted error.

From the evidence most favorable to the plaintiff, the jury could have found the following facts: The defendants, a family partnership known as Johnson Realty Company, owned premises known as 507 Orchard Street in New Haven, consisting of two stores and two dwelling units. On May 29, 1961, they leased to the plaintiff the first-floor apartment at that address for a two-year term, at the rate of $65 a month. The written lease was extended during the lease term to run for an additional year after June 1, 1963. Egress from and ingress to the rear of the premises were by means of the landing and unenclosed outside wooden stairway. The landing was adjacent to the rear door of the tenement house. No other tenant had occasion to use this stairway since another one in the rear led to the second-floor apartment. The Johnson Realty Company owned other buildings adjoining the leased premises and had, next to the building at 507 Orchard Street, a shop for the purpose of making repairs to and for maintenance of the apartments. In addition, the defendants had an office nearby at 517 Orchard Street, from which they conducted their

realty business and where they kept, on a board, keys to all the apartments, including the plaintiff's apartment, in order to gain access and make repairs in the apartments. It was the custom of the defendants' employees, when a tenant needed repairs, for the foreman to get the key from the office board and go to the apartment to make repairs. On occasion, the defendants, without prearrangement with the plaintiff, used one of the keys to gain entrance to her apartment.

Under the terms of both the lease and the extension of lease, the lessor and the lessor's agents or contractors were allowed "to enter the demised premises for inspection and/or due to an emergency and/or any alteration of the building where it is necessary to enter or work in Lessee's demised premises." In accordance with this provision in the lease, the defendant A. Allen Johnson considered it his function to keep everything in repair and to take care of repairs to the outside stairs and of all other repairs and maintenance. In fulfilling this function, he made repairs to 507 Orchard Street during 1963. He also inspected the leased property between fifteen and eighteen times a year for the purpose of correction or improvement or alteration, as well as ordering repairs when in his opinion any property was found in need of them.

At some time after the plaintiff entered on the premises but before her fall, she asked either the defendant Leonard Johnson or the defendant A. Allen Johnson and Thomas Connelly, an employee of the Johnson Realty Company who was hired to make repairs in and about the defendants' property during the lease term, to fix the back porch and stairs. Also, four to six weeks before October 13, 1963, A. Allen Johnson inspected the stairway lead-

ing from the plaintiff's apartment to the rear yard by jumping up and down on the bottom step, by shaking the bannister, and by visually observing the other steps. At this inspection he noticed that the wood of the old step was bad in part.

Subsequently, on October 13, 1963, at about 5 o'clock in the morning, while the plaintiff was descending the rear stairs, the third step from the bottom broke and gave way, and she was thrown to the ground. The wood of the step was soft and decayed. All parts of the stairs of which the third step was a part were worn and weather-beaten over a period of years and had not been painted since 1954. These stairs were improperly braced because the wood brace was on the ground and rotted. The plaintiff notified the defendants on the same day of her fall.

In the past, the defendants had repaired or fixed the stairs before the date of the plaintiff's fall, while the tenants had not. After the step broke, causing the plaintiff's fall, the defendant A. Allen Johnson viewed the stairs and said: "Let's start and straighten out these stairs." The defendants then tore down or demolished the old steps and replaced them with new ones. The defendants also replaced and repaired other outside stairs to the rear of 507 Orchard Street.

## I

At common law as a general rule, the landlord is under no implied obligation or liability to the tenant for personal injuries due to the defective condition of the demised premises or the lack of repair of defects therein where the landlord has not made any warranty or contract relative to the condition of the demised premises or the repair of defects. *Pigna-*

*tario* v. *Meyers,* 100 Conn. 234, 237, 123 A. 263; 32 Am. Jur. 526, Landlord and Tenant, § 662; 52 C.J.S., Landlord and Tenant, § 417(3). The general rule and its certain or apparent exceptions are carefully analyzed in *Masterson* v. *Atherton,* 149 Conn. 302, 179 A.2d 592, including, at page 309, the theory upon which the present plaintiff sought recovery, namely, that the landlord had control of the stairway.

The word "control" has no legal or technical meaning distinct from that given in its popular acceptation; *Robinson* v. *Kistler,* 62 W. Va. 489, 495, 59 S.E. 505; and refers to the power or authority to manage, superintend, direct or oversee. *Hardware Mutual Casualty Co.* v. *Crafton,* 350 S.W.2d 506, 507 (Ark.); see *Bates* v. *Connecticut Power Co.,* 130 Conn. 256, 261, 33 A.2d 342; 9A Words & Phrases 5, 7, 31 (Perm. Ed.). Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue. *Miller* v. *Mutual Mortgage Co.,* 112 Conn. 303, 305, 152 A. 154. Responsibility for the proper care over portions of the premises within the leased area may rest with the lessor if, with the acquiescence of the lessee, he retains control, and an agreement between the parties as to the landlord's right to inspect the premises together with his exclusive right to make repairs therein and the tenant's total abstention from making any repairs would be the equivalent of retention of control of the leased premises. *Smith* v. *Housing Authority,* 144 Conn. 13, 16, 17, 127 A.2d 45.

The written lease read as a whole cannot be said to resolve definitely or expressly the issue of control. Thus the actual use of the stairway, the circumstances attending its use, and the evidence as to repairs become relevant to the issue of actual control. *Martel* v. *Malone,* 138 Conn. 385, 391, 85 A.2d 246.

The making of repairs by the landlord, in and of itself, may denote a retention of control or may be an indicia of limited, temporary or full control. For the court to determine whether a conclusion of retained control is warranted, consideration must be given to the extent and instances under which the landlord undertook to make or in fact did make repairs to the stairway. The conduct, acts and words of the parties, in cases where the written lease is unclear or doubtful, constitute evidence of the intention of the parties that the lease should be construed in accordance with their own practical construction. *Volk* v. *Volk Mfg. Co.,* 101 Conn. 594, 601, 126 A. 847; 4 Williston, Contracts (3d Ed.) § 623.

In addition to the evidence offered by the plaintiff, already reviewed above, the unattacked findings show that the named defendant during the tenancy, according to his custom, would inspect any part of the premises in question and that, if he thought it needed repairing, he would in fact go ahead and repair it. That he had the right to enter the apartments to inspect is clear from the lease.[1] There is also an unattacked finding as to the plaintiff's proof that "it was up to [the] defendants to keep everything in repair including outside stairways, floors, plumbing, painting and the sidewalk." The fair im-

---

[1] "[Paragraph] Twelve:—The Landlord shall have the right to enter any of the leased premises at reasonable hours for the purpose of making necessary repairs . . . ."

port of this finding is that the plaintiff offered evidence to prove that it was the defendants' duty to make repairs to the stairways of the building. When this finding is considered in connection with paragraph 10 of the lease forbidding the insertion by the tenant of nails in parts of the building, it is not unreasonable, in view of all the evidence offered, that the trial court left the issue to the jury as a question of fact to be resolved by them.[2]

A finding of retention of control of the stairway may be reasonably supported in the present case where there is evidence that the lessor was granted general access to the apartment for the purpose of inspection and repair.[3] *Masterson* v. *Atherton,* 149 Conn. 302, 310, 179 A.2d 592.

## II

The defendants have assigned as error portions of the charge to the jury relative to the effect of certain provisions of the housing code of the city of New Haven. Authority for the enactment of the housing code may be found in the charter of the city of New Haven and in the General Statutes. See General Statutes §§ 7-148, 7-194 (26), (29), (41). As

---

[2] "[Paragraph] Ten:—None of the walls, ceilings, or floors shall be marked or painted and no nails, hooks or screws shall be driven or inserted in any part of the walls or woodwork in said building. . . ."

[3] Paragraph 4 of the extension of lease provided: "Lessee further covenants and agrees to allow the Lessor, Lessor's agents or contractors to enter the demised premises for inspection and/or due to an emergency and/or any alteration of the building where it is necessary to enter or work in Lessee's demised premises."

Paragraph 18 of the original lease provided: "The said Tenant agrees that said Landlord and representatives shall have the right during the term hereinbefore provided for, to enter into and upon said premises or any part thereof at all reasonable hours for the purpose of inspecting the same to see that the covenants on the part of the Tenant are being faithfully kept and performed."

did the trial court, we confine our consideration of the validity and effect of this ordinance to the particular circumstances of the present case, involving, as it does, no interior portion of the building but solely an outside stairway. The code expressly provides that, subject to a criminal penalty for noncompliance, each owner or lessor shall comply with the requirement (¶ 302 [c]) that every outside stair and porch "shall be maintained and kept in sound condition and good repair" and (¶ 300 [f]) that "[e]very dwelling unit shall have safe, unobstructed means of egress leading to safe and open spaces at ground level as required by statutes, ordinances and regulations of the State of Connecticut and the city."

The violation of an ordinance enacted for the protection of the public is negligence as a matter of law. *Buravski* v. *DiMeola,* 141 Conn. 726, 728, 109 A.2d 867; *Kelly* v. *The Vogue,* 21 Wash. 2d 785, 787, 153 P.2d 277; *Maloney* v. *Hearst Hotels Corporation,* 274 N.Y. 106, 8 N.E.2d 296; *Finnegan* v. *Royal Realty Co.,* 35 Cal. 2d 409, 218 P.2d 17; 32 Am. Jur., Landlord and Tenant, § 660; see Restatement (Second), 2 Torts § 286, comments a, c, § 287, comment a. From a review of the housing code in its entirety, it is apparent that the plaintiff is a member of the class for whose protection the housing code was enacted. *Fairport, P. & E.R. Co.* v. *Meredith,* 292 U.S. 589, 596, 54 S. Ct. 826, 78 L. Ed. 1446; 38 Am. Jur., Negligence, § 165. This is evident from the design of the code as enacted and particularly from a review of the preamble wherein it is stated, inter alia, that it establishes minimum standards governing the condition and maintenance of dwellings and conditions essential to make dwellings safe and fit for human habitation; that it fixes certain

responsibilities and duties of owners and occupants because there is or may be dilapidated, unsafe, and dangerous structures, among others, constituting a menace to the health and safety of the people of the city; and that a housing code is essential to establish these responsibilities and to set minimum standards sufficient to protect public health and safety. The owner, under the code, either as occupant or landlord has the obligation to maintain and keep every outside stair in sound condition or good repair. New Haven Housing Code, ¶ 302 (c) (1954, as amended). The violation of a city ordinance which provides for a criminal penalty may be found to be the proximate cause of an injury which will support recovery in an action in negligence. *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201 208, 56 A. 498; *McLain* v. *Haley,* 53 N.M. 327, 207 P.2d 1013; *Winterson* v. *Pantel Realty Co.,* 135 Neb. 472, 282 N.W. 393; 52 C.J.S., Landlord and Tenant, § 417 (5). The court adequately charged the jury on the issue of liability to the plaintiff which might arise from a breach by the defendants of the duty imposed by the New Haven housing code to maintain "in sound condition and good repair" the outside stairway leading to the apartment occupied by her.

### III

Under the circumstances of the present case, we find no merit to the defendants' attack upon the constitutionality of the housing code based on the holding of such cases as *Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930, and *See* v. *Seattle,* 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943. The defendants' assertion that it is not within the power of the board of aldermen to authorize an invasion of the privacy of a tenant by granting

rights of inspection to a landlord or an enforcement officer is inapposite to such a situation as this one involving an outside stairway to which the landlord has unlimited access for purposes of inspection and repair. The defendants have failed to demonstrate that in this case there has been any invasion of any of their constitutionally protected rights, and accordingly they cannot successfully attack as unconstitutional a legislative provision which is not applicable to their particular situation. *Hardware Mutual Casualty Co.* v. *Premo*, 153 Conn. 465, 470, 471, 217 A.2d 698; 16 Am. Jur. 2d, Constitutional Law, § 119.

## IV

The defendants interposed a defense to the original complaint, alleging that the plaintiff agreed that the defendants shall not be liable for any damage to the tenants' health, person or property owing to the building or any part thereof becoming out of repair. To this defense the plaintiff demurred on the ground that the defense was not supported by law in that such a contract was void, against public policy and constituted a breach of duty imposed by the "statutes" of the city of New Haven in their housing code. The demurrer was sustained, a substituted complaint was filed, and the defendants filed an answer to the substituted complaint but did not renew this defense. In filing an entirely new answer, the defendants removed the necessity of the court's considering the demurrer since they thereby waived any right to a review of the ruling that their original special defense was defective. *Falzone* v. *Gruner*, 132 Conn. 415, 418, 45 A.2d 153; see *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 553, 227 A.2d 418.

The defendants claim that the ruling on the demurrer does not dispose of this issue because thereafter the written lease was admitted in evidence at the trial with the exculpatory clause excised.[4] The defendants objected to the ruling and took exception. It is the defendants' claim that this clause in the lease should have been admitted and gone to the jury as a part of the written lease in spite of the adverse ruling of the court on the demurrer and that as a consequence judgment should thereon have been rendered in behalf of the defendants. The defendants, however, agreed to make repairs to the premises under the lease, and the jury could reasonably have found that they failed to do so under their agreement. The housing code imposes some duties upon owners and others upon occupants; neither can insulate himself from the duties imposed by law by making private arrangements with others. Contracts of private parties cannot vary obligations imposed by law. *Montgomery* v. *Branford,* 107 Conn. 697, 703, 142 A. 574. If, in order to discharge a duty to repair, the owner must make reasonable inspections, he must either make these inspections or be chargeable with whatever knowledge a reasonable inspection would disclose. The ordinance was enacted for the protection of the public. *Buravski* v. *DiMeola,* 141 Conn. 726, 728, 109 A.2d 867; 13 Am. Jur. 2d, Buildings, § 32. A statutory duty imposed on an individual for the benefit of another cannot be waived, and any attempted waiver is inoperative.

---

[4] "[Paragraph] Five:—Landlord shall not be liable for any damage to Tenant's health, person or any property of any kind in the premises or said building, due to the building or any part thereof, or any appurtenances thereof becoming out of repair, or due to the happening of any accident in or about said building, or due to any act or neglect of any Tenant or occupant of said building or of any other person. . . ."

*L'Heureux* v. *Hurley*, 117 Conn. 347, 356, 168 A. 8; 6 Williston, Contracts (Rev. Ed.) §§ 1751B, 1751C; 6A Corbin, Contracts § 1515, "Power to Waive or Bargain Away Rights and Defenses Conferred by Statute," p. 728.

## V

In the course of the trial, after an objection by counsel for the defendants on the ground that the evidence violated "the parol evidence rule," the plaintiff was permitted to testify as follows: Q. "Did Mr. Johnson say anything concerning the stairs?" A. "Yes, . . . when I rent the place, Mr. Johnson said that he would take care of the apartment, the painting and everything, and he would take care— he would fix the stairs for me, too." The defendants argue that this testimony should have been excluded because (1) the original lease provided that taking possession of the premises shall be conclusive evidence that the premises were in good and satisfactory condition when possession was taken and (2) an unacknowledged addendum to the extension of lease states that it may not be modified orally. The extension of lease also included the following language: "Lessee further agrees to accept this Extension of Lease upon the same terms and pursuant to the same stipulations, covenants and agreements as are in the original Lease dated May 29th, 1961." The general objection based on "the parol evidence rule" did not render the testimony inadmissible for any one of several reasons under the peculiar circumstances of this case. *McDowell* v. *Geokan*, 73 Idaho 430, 435, 252 P.2d 1056; *Doub* v. *Hauser*, 256 N.C. 331, 335, 123 S.E.2d 821; 1 Wigmore, Evidence (3d Ed.) § 13. The conversation was admissible to prove notice of a defect by

the tenant and acknowledgment thereof by the land-lord which would invoke the operation of the covenant to repair on notice from the moment the lease started. If the contract is ambiguous, the court may admit parol evidence of the conversations between the parties prior to the execution of the lease as an aid in its interpretation and in the ascertainment of the intent of the parties expressed in it. *Greenwich Plumbing & Heating Co.* v. *A. Barbaresi & Son, Inc.*, 147 Conn. 580, 584, 164 A.2d 405.

Paragraph 10 of the lease (see footnote 2) forbids the insertion of a nail in the building. The prohibition is not directed expressly to any one individual. The plaintiff claims that the prohibition was directed to her. The acts, conduct, words and promises of the parties at the inception of the lease are evidence which is permissible in construing this provision to show a reservation of control in the defendants. The parol evidence rule is not a rule of evidence but one of substantive law. *Cohn* v. *Dunn*, 111 Conn. 342, 346, 149 A. 851; 9 Wigmore, Evidence (3d Ed.) § 2400, p. 3. It does not prevent proof of a collateral agreement. 4 Williston, Contracts (3d Ed.) § 645 n.13. The evidence of the collateral agreement to repair the stairs as an incident to entering into the lease might be construed to be an agreement concerning the execution of the contract. *Shopper Publishing Co.* v. *Skat Co.*, 90 Conn. 317, 321, 97 A. 317. The lease included a provision that on actual notice the landlord would enter and repair. An agreement to repair the defect in the stairs as evidence of a defect a moment after the contract was signed would have rendered this provision operative. Notice coincident with the execution of the lease and the agreement that the notice would be followed by effectual action would be designed to

make the lease about to be signed effective as to its terms and not to vary them. Parol evidence is likewise admitted to prove the existence of the parties' intention to enter into a contemporaneous oral agreement. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885.

Finally, where the housing code of the city is applicable to the controversy, there is an obligation on the part of the landlord to repair the premises apart from the lease and the contractual agreement of the parties. The admission of the disputed evidence was not erroneous since it was competent, relevant and material for any one of the particular purposes discussed.

## VI

The defendants claim error in the charge in the light of evidence of the plaintiff's knowledge of the defective condition of the stairs at the time of leasing. In pursuing this claim, they argue that two requests to charge were not covered in the instructions to the jury. These requests, citing *Masterson* v. *Atherton,* 149 Conn. 302, 179 A.2d 592, and *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 189, 190, 38 A.2d 668, were to the effect that the tenant takes the premises as she finds them and that she cannot recover if the defect was visible and known to her before she was injured. In its instructions, the court fully discussed the duties, obligations and rights of the parties both under the rules of the common law and under the housing code. The court in at least two instances in the course of the charge covered the essential elements of the defendants' requests to charge in the following manner: "When land is leased to a tenant the law of property regards the lease as equivalent to a sale

of the premises for the term of the lease. The tenant becomes for the time being the owner and occupier. In the absence of agreement to the contrary the landlord surrenders both possession and control of the leased premises to the tenant and he has no right even to enter without the tenant's permission. This right in the tenant of exclusive possession and control includes not only the apartment itself but also as incidental thereto those parts of the structure, such as stairways and passageways, which form an integral part of the tenement. In this case, for example, there is no dispute that the rear stairway on which the plaintiff fell leads only to the plaintiff's apartment and thus ordinarily would be considered as an integral part of the plaintiff's apartment. As a consequence of the transfer by the landlord of exclusive possession and control to the tenant it is the general rule that the landlord is under no obligation to anyone to look after the premises or keep them in repair and he is not responsible to persons injured on the land for conditions which develop after exclusive possession has been transferred. . . . When a tenant takes exclusive possession of demised premises she ordinarily takes them as she finds them and the landlord is not liable for structural defects therein except those which the tenant could not discern with reasonable diligence and with knowledge of which the landlord was chargeable."

The plaintiff requested the defendants to fix the back porch and stairs, and it was the duty of the defendants under the terms of the written lease to repair them with reasonable dispatch after having received notice of the necessity for such repairs. Where there is an agreement to repair, the ordinary rules as to the assumption by the tenant of the risk

of known or obvious defects in the leased premises do not necessarily apply. *Dean* v. *Hershowitz,* 119 Conn. 398, 412, 177 A. 262. A tenant does not assume a risk which has its basis in the violation of a legislative requirement enacted for his benefit. *Maitz* v. *Lulewicz,* 133 Conn. 355, 359, 51 A.2d 595.

## VII

The defendants claim that there was "no substantiation in the evidence" of the court's charge as it relates to the loss of earning capacity of the plaintiff. The instructions in this regard closely followed the rule of loss or impairment of earning capacity enunciated in *Lashin* v. *Corcoran,* 146 Conn. 512, 514, 515, 152 A.2d 639; 25 C.J.S., Damages, § 40. In this connection the court stated that the plaintiff claimed she was earning about $100 a week prior to the accident and that they were entitled to consider this amount in measuring her loss of earning capacity. The claims of proof show that the plaintiff was earning $100 per week as a short-order cook prior to her fall and injury and that she tried to work in other restaurants but was unable to cope with the job. The evidence printed in the appendices recites that the plaintiff worked from 5 o'clock in the afternoon to 2 or 3 a.m. at Dee's Luncheonette Restaurant as a short-order cook and that she used to go home at 4 o'clock in the morning; that in the two, three, or four weeks before the accident she earned $100 a week; that she was supposed to be a partner and invested about $1500 in the restaurant but did not get paid when she did not work; that in fact she got $100 a week from September 1 until she fell; and that they replaced her after she fell. There was some ambiguity in this line of questioning at one point wherein the plaintiff said she was to

get $100 a week only if the partnership made a profit, but in fact she did get the $100 a week. There was evidence, therefore, which would support the challenged finding. If the jury believed this evidence, they could conclude that the plaintiff worked approximately twelve hours a day and received $100 a week. The defendants have cited *Bianco* v. *Floatex, Inc.,* 145 Conn. 523, 525, 144 A.2d 323, to support their claim that the plaintiff should have broken down the compensation into amounts for return of capital, profit and services. Evidence, however, that the plaintiff in fact received $100 a week and worked about ten or more hours a night, if believed, would substantiate the charge as it relates to this issue. *Bach* v. *Giordano,* 144 Conn. 183, 186, 128 A.2d 323.

In the course of its charge concerning the question of damages, the court included as part of its instructions, a statement regarding the inalienable right to the pursuit of happiness and reviewed a number of activities, which, it stated, if interfered with through someone's negligence, required the person responsible to respond to the plaintiff in damages. Although the remainder of the charge on damages as a whole was correct in law, adequate and adapted to the issues, it was vitiated by the inclusion of this portion outlining this concept. Instructions regarding the elements to be considered and the proper measure of damages (1) should be confined to matters of damages in issue by virtue of the pleadings and evidence in the case, (2) must be sufficiently definite to authorize the assessment of damages to which the party is entitled, and (3) cannot be left entirely to the discretion of the jury without reasonable guidelines for them to find damages to which they think the plaintiff may be entitled. It is

the duty of the court to submit to the jury only those issues which are relevant to the pleadings and the facts in evidence. *Intelisano* v. *Greenwell,* 155 Conn. 436, 443, 232 A.2d 490. The inclusion of this element in the charge was error. *Moiger* v. *Connecticut Ice Cream Co.,* 146 Conn. 551, 555, 152 A.2d 925.

## VIII

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion KING, C. J., HOUSE and THIM, Js., concurred; ALCORN, J., concurred in the result.