[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joyce Oliver, filed a four count "first amended complaint" dated October 15, 1993, in which she alleges that on two different occasions she slipped and fell on a floor on premises occupied by Continuing Health Care Corporation, (CHCC), and owned by Health and Rehabilitation Properties Trust (HRPT), the defendants. Counts one and two are directed toward CHCC and allege that Oliver was injured on August 19, 1991, and on April 25, 1993, due to the negligence of CHCC. Counts one and two were dismissed by the court, Fracasse, J., on July 8, 1996, on the ground that the court lacked subject matter jurisdiction because counts one and two were barred by the exclusivity provision of General Statutes § 31-284 (a).
Counts three and four allege that on, and prior to, August 19, 1991, and April 25, 1993, the dates of the alleged slip and falls, HRPT owned, controlled and was responsible for the maintenance of the premises where Oliver suffered her injuries. Counts three and four allege that on the respective dates Oliver was walking in a hallway when she slipped on the floor, fell and suffered injuries. Oliver alleges in counts three and four that HRPT was negligent in that: (1) HRPT failed to remedy a spill that it knew or reasonably should have known was "unsafe to remedy;" (2) the floor was unreasonably slick and HRPT knew or should have known of the unsafe nature of the floor; (3) HRPT failed to warn Oliver about the defective nature of the floor; (4) HRPT failed to correct the defective nature of the floor; and (5) HRPT failed to properly monitor the floor for spills.
On March 3, 1994, HRPT filed an answer and special defense to the first amended complaint wherein HRPT denied the material allegations of counts three and four and asserted a special defense of contributory negligence. On March 31, 1994, Oliver filed a reply to the special defense denying the assertions of HRPT.
HRPT filed a motion for permission to file a motion for summary judgment, date, stamped March 20, 1997. The motion was granted by the court, Fracasse, J., on April 28, 1997. On April 28, 1997, HRPT filed a motion for summary judgment accompanied by a memorandum of law in support and four exhibits. The exhibits consist of the following: (1) the affidavit of Paul Dolan, the CT Page 6903 president of CHCC (Exhibit A); (2) the affidavit of Mark Finkelstein, the president of HRPT from 1991 to 1992 (Exhibit B); (3) the affidavit of Paul Hegarty, the current president and former treasurer of HRPT from 1991-1992 (Exhibit C); and (4) a copy of the lease and master lease accompanied by a certificate of the secretary of HRPT attesting to the accuracy of the documents. (Exhibit D).
Oliver filed an objection to the motion for summary judgment dated May 22, 1997, accompanied by a memorandum of law and an affidavit of Gerald T. Giaimo, counsel for Oliver.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995).
"When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by [Practice Book] § 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant." (Internal quotation marks omitted.) Catz v. Rubenstein,201 Conn. 39, 49, 513 A.2d 98 (1986).
HRPT moves for summary judgment on the ground that "there is no genuine issue of material fact as to liability because [HRPT] owes no duty to the plaintiff based on an interpretation of the express provisions of the lease with the co-defendant, [CHCC], and based on applicable Connecticut law."[1] "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Pion v.Southern New England Telephone Co., 44 Conn. App. 657, 660, ___ A.2d ___ (1997). HRPT argues that it entered into a lease with CHCC which expressly delegated control of the premises to CHCC and provided that CHCC would be responsible for maintenance and repair of the leased premises. Absent control over the premises, HRPT contends that it cannot be found to have owed a duty to Oliver. In response, Oliver argues that summary judgment should be denied because there are genuine issues of material fact.
The issue in the present case is whether the lease, written CT Page 6904 as a whole, "definitely or expressly resolves the issue of control." Panaroni v. Johnson, 158 Conn. 921 99, 256 A.2d 246
(1969). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) Zamstein v. Marvasti, 240 Conn. 549, 558, ___ A.2d ___ (1997). "Liability for an injury due to defective premises does not depend on title, but on possession and control." Farlow v.Andrews Corporation, 154 Conn. 220, 225, 224 A.2d 546 (1966). "[T]he common law imposes on landlords only a duty to maintain in a reasonably safe condition those areas of their premises over which they exercise control. . . ." Gore v. Peoples's SavingsBank, 235 Conn. 360, 375, 665 A.2d 1341, on remand,40 Conn. App. 219, 670 A.2d 332 (1995).
"[A] landlord does not have a common law duty to inspect leased premises for defects unless the landlord has contracted to do so . . . ." (Citation omitted.) White v. Edmonds,38 Conn. App. 175, 181, 659 A.2d 748 (1995). "If the landowner so deals with the premises as to place them within the sole possession and control of another, so that the former no longer has any right of entry, as where he leases them without express or implied reservation of such a right, he cannot be held to a performance of a duty of inspection and repair. . . ." Perkel v. Grayson,119 Conn. 465, 468, 177 A. 534 (1935). "In the absence of any special covenant or agreement, ordinary repairs upon such part of the leased premises as are in the exclusive possession and control of the tenant must be made by the tenant, if he desires them to be made, and he cannot require the landlord to make them during the term of the lease." Gallagher v. Button, 73 Conn. 172, 176,46 A. 819 (1900).
In the present case, HRPT has submitted several affidavits: exhibits A, B and C. In each of these affidavits the affiant attests: (1) that during 1991 and 1992 CHCC was the tenant on the property where Oliver was injured pursuant to a lease; (2) that HRPT was the absentee landlord of the property during that time; (3) that CHCC accepted duty to maintain the premises and that this duty was expressly stated in the lease between HRPT and CHCC; (4) that pursuant to the lease CHCC had exclusive control and possession of the premises; and (5) CHCC had the exclusive duty to maintain premises. (Affidavits of Dolan, Finkelstein and Hegarty.) Oliver has failed to file affidavits or other documents contesting the present affiants' attestations. CT Page 6905
In the present case, HRPT has submitted a certified copy of the lease documents entered into between CHCC and HRPT. These document consist of, inter alia, a lease which provides for rent, fees and fixes the term of the lease, and a master lease which provides the general terms and conditions the landlord/tenant relationship. (Exhibit D.) A lease and "its construction presents a question of law for the court. . . . In construing a lease the controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had. . . . [T]he lease must be construed as a whole and in such a manner as to give every effect to every provision, if reasonably possible." (Citations omitted, internal quotation marks omitted.) Robinson v. Weitz, 171 Conn. 545, 551,370 A.2d 1066 (1976).
Article VI § 6.1 of the master lease provides, in pertinent part, that: "the Leased Property is the property of the Lessor and that Lessee has only the right to exclusive possession and use of the Leased Property upon the terms and conditions of this Lease." This provision expressly provides that CHCC has exclusive possession and control of the leased property. Article IX, § 9.1(a) of the master lease provides, in pertinent part, that: "Lessee, at its expense, will keep the Leased Property . . . which are under Lessee's control in good order and repair . . . and . . . make all necessary and appropriate repairs and replacements thereto of every kind and nature . . . . (b) Lessor shall not be under any circumstances be required to . . . make any repairs . . . to the leased property." Article I § 1.1 of the master lease defines "Leased Property," in pertinent part, as "the land . . . all buildings [and] structures . . . ." Articles VI § 6.1, IX, § 9.1(a) and I § 1.1 are unambiguous and require no extrinsic evidence to determine the intent expressed in the lease documents.
"Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact . . . ." (Emphasis provided.) Panaroni v. Johnson, supra,158 Conn. 98. The lease and master lease expressly indicate that CHCC had exclusive possession and control of the premises and that CHCC assumed full responsibility and duties for the maintenance of the premises. Accordingly, HRPT had no duty, as a matter of law, to inspect, repair or maintain the premises. CT Page 6906 Accordingly, HRPT is entitled to summary judgment unless Oliver "[establishes] a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." Lazarin v. Shawmut Bank of Connecticut, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522865 (July 12, 1994) (Hennessey, J.) (9 CSCR 805), citing Connell v. Colwell, 214 Conn. 242, 251, 571 A.2d 116
(1990).
Despite the express language of the lease and the attestations of the affiants, Oliver argues that the lease documents do not conclusively establish that CHCC had exclusive possession and control of the premises. In support of her contention Oliver argues that there are genuine issues of material fact regarding the following: whether HRPT had notice of the alleged defect and thus had a duty to remedy the defect; whether the lease was in effect at the time of the two alleged incidents; whether the lease has any binding effect on the plaintiff; whether CHCC has exclusive possession and control.
Oliver argues that the issue of whether HRPT had notice of the alleged defect is an issue of material fact because she slipped and fell on two occasions. In support, Oliver cites to Wright, Connecticut Law of Torts, 3rd, § 60, for the proposition that "where a landlord knows that a tenant will continue prior injurious conduct he may be liable concurrently with the tenant." (Oliver's memorandum, § C.1.) Oliver has misinterpreted this section. This section of Connecticut Law ofTorts, 3rd, is entitled, "Liability to Persons Outside Premises." (Emphasis provided). This section does not apply to landlord liability as to persons injured within the leased premises. Oliver also cites to Perkins v. Weibel, 132 Conn. 50, 42 A.2d 360
(1945), as further support for her assertion. This case is inapplicable because in Perkins the plaintiff was injured on a sidewalk appurtenant to the landlord's property due to a public nuisance created by the defendants. In the present case, Oliver does not allege that HRPT created a nuisance, much less a public nuisance, and, further, her alleged injuries were suffered within the leased premises. Accordingly, the issue of whether HRPT had notice of the alleged incidents is not relevant to the issue of whether HRPT owned a duty to Oliver under the circumstances of the present case.
Oliver next argues that the lease does not govern the issue of duty because it was not in effect at the time the plaintiff CT Page 6907 suffered her injuries. Oliver contends that the lease "clearly makes no sense" because "it states that it is a `fixed term lease, commencing on 12/23/86 and ending on 12/22/86.'" (Plaintiff's memorandum, § C.2.) Paragraph three of the lease provides: Fixed Term. The Fixed Term of this Lease is ten (10) years, commencing on December 23, 1986, the `Commencement Date,' and ending on December 22, 1986." (Defendant's exhibit D, Lease, ¶ 3.) Oliver has misquoted the pertinent lease language. The lease language unambiguously states that the lease term would last for ten years beginning on December 23, 1986. The ending date is an obvious typographical error and the court can take judicial notice of the fact that December 22, 1996, is ten years from the date of commencement. "Matters which may properly be judicially noticed in this way are those which come to the knowledge of men generally in the course of the ordinary experience of life or those matters which are generally accepted by mankind as true and are capable of ready and unquestionable demonstration." State v. Tomanelli, 153 Conn. 365, 369,216 A.2d 625 (1966). Furthermore, all three affiants, who are signatories to the lease, attest that the lease was in effect at the time of the alleged incidents in 1991 and 1992. Oliver's contention that the typographical error contained in the end date raises a genuine issue of material fact as to whether the lease was in effect is unpersuasive.
Oliver further argues that HRPT did not submit any evidence indicating that the lease was recorded pursuant to General Statutes § 47.19.[2] Oliver's contention that the duties delegated under the lease and master lease are ineffectual as to her because the lease may not have been recorded pursuant to § 47-19 is meritless. "The purpose of [General Statutes §47-19] is to protect creditors and bona fide purchasers from being bound by unrecorded leases of more than a year." DrazenProperties Limited Partnership v. E. F. Mahon, Inc.,19 Conn. App. 471, 475, 562 A.2d 1142 (1989). "General Statutes §47-19 is designed to protect bona fide purchasers without actual notice from being bound by unrecorded leases." Id., 477. §47-19 has no application in the present case.
Oliver also argues that HRPT has not conclusively established that CHCC was in exclusive possession and control of the premises. Oliver contends that HRPT retained the right to enter upon the premises pursuant to Article XVII of the master lease. Article XVII provides in pertinent part: "Lessor's Right to CureLessee's Default. If lessee shall fail to make any payment or to CT Page 6908 perform any act required to be made or performed under this Lease, and to cure the same within the relevant time periods provided in Section 16.1, Lessor, after Notice to Lessee, without waiving or releasing any Event of Default, may (but shall beunder no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Lessee, and may, to the extent permitted by law, enter upon the Leased Property for such purpose and take all such action thereon as, in Lessor's opinion, may be necessary or appropriate therefor. . . ." (Emphasis provided.) Article XVI § 16.1 provides in pertinent part: "Events of Default. If any one or more of the following events (individually, an `Event of Default') shall occur: . . . (c) if Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure is not cured by Lessee within a period of thirty (30) days after Notice thereof from Lessor, unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessee proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof . . . Lessor . . . may terminate this Lease. . . ."
Oliver contends that these two provisions of the master lease clearly show that HRPT had the right to enter and cure defects not cured by the tenant CHCC and that this raises an issue of fact regarding possession and control of the premises. Article XVI embodies the parties' agreement as to when the tenant will be in default on the lease allowing HRPT to terminate the lease and to reenter the leased property. See Article XVI § 16.2 (giving landlord remedies in the event of tenant's default). Article XVI allows HRPT to take control of the premises only in the event of a default. Article XVI does not raise an issue of fact regarding CHCC's exclusive control of the premises while the lease is in effect.
Article XVII merely gives HRPT the right, but imposes no obligation, to enter, subject to the notice provision of Article 16.1(c) and applicable laws, and cure any default by the tenant. HRPT's right to enter the premises under these limited circumstances cannot be construed to raise an issue of fact regarding control of the premises. See Masterson v. Atherton,149 Conn. 302, 310, 179 A.2d 592 (1962) (where a landlord promises to make repairs to the premises after the tenant informed the landlord of a need for repairs the court emphasized that the most a jury could infer was that access to the premises would be CT Page 6909 granted by the tenant; the jury could not infer that the landlord had general access for inspection and repair so as to support a finding of control); Tucci v. Days Inn, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 271770 (June 21, 1994) (Rodriguez, J.) (a provision giving the landlord the right to cure the tenant's default of any covenant in the lease, but only after thirty days notice, is significant with respect to the issue of possession and control but "does not change any provisions in the lease which are material to the issue of control").
Oliver also argues that Article XXVII gave HRPT a right to inspect the premises. Article XXVII of the master lease provides: "Lessee shall permit Lessor and its authorized representatives to inspect the Leased Property during usual business hours subject to any security, health, safety or patient or business confidentiality requirements of Lessee or any governmental agency or Insurance Requirement relating to the Leased Property or imposed by law or applicable regulations." In Panaroni v.Johnson, supra, the court emphasized that a finding of control of the premises may be reasonable, in the absence of express provisions in the lease, where the evidence shows that the landlord was granted general access to the leased property "for the purpose of inspection and repair." Panaroni v. Johnson,
supra, 158 Conn. 100. (Emphasis provided). Panaroni is distinguishable from the present case in three ways: (1) the lease in the present case expressly provides that CHCC shall repair and maintain the premises; (2) HRPT did not retain a right of general access as did the landlord in Panaroni. HRPT merely retained a right of access subject to the control of CHCC; (3) unlike the landlord in Panaroni, HRPT did not promise or obligate itself to make repairs. Moreover, even if HRPT elected to inspect the premises this language does not impose a duty upon HRPT torepair or maintain the leased premises.
Additionally, this provision does not raise an issue of material fact regarding CHCC's exclusive control of the premises. This provision does not contradict the other provisions of the lease which give CHCC the exclusive possession and control of the premises or raise a genuine issue of material fact regarding CHCC's exclusive control and possession of the premises, because HRPT's right to inspect was controlled by CHCC's security, health and safety needs as well as any other requirements CHCC may have had. Article XXVII of the master lease does not raise a genuine issue of material fact regarding the control of the premises. CT Page 6910
For the foregoing reasons HRPT has met its burden of showing that there is no genuine issue of material fact and that HRPT owes no duty to Oliver as a matter of law. Accordingly, HRPT's motion for summary judgment is granted.
Howard F. Zoarski Judge Trial Referee