[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff lived with his mother in her home for almost all of his thirty-nine years. At least once in 1996 and once in 1997 she threw him out for a matter of several days because of his chronic use of illegal narcotics. On March 8, 1997, police came to the home and took the plaintiff into custody for a narcotics-related offense for which he served a prison term of six months, from March 8, 1997 to September 8, 1997. On April 6, 1997, while the plaintiff was imprisoned, the plaintiff's mother died testate. In her will, which the plaintiff is contesting, she bequeathed the home to the defendant, the plaintiff's brother, who also is the executor of her estate.
When the plaintiff was released from prison on September 8, 1997, he requested that the defendant provide him with his personal property. The defendant complied with this request. When the plaintiff insisted on living in the "family home", the defendant refused and has locked out the plaintiff.[1] The plaintiff has brought this action for forcible entry and detainer.
"The right of action for forcible entry and detainer is a creature of statute. Harbor View Building Corporation v. Baron,10 Conn. Sup. 100, 101 (1941). . . . A plaintiff suing under the forcible entry and detainer statute must prove his actual possession of the land or property from which he claims to have been dispossessed. Carrier v. Carrier, 85 Conn. 203, 207, 82 A. 187
(1912); Bell v. Raymond, 18 Conn. 91, 100 (1846)." Communiter BreakCo. v. Scinto, 196 Conn. 390, 392-393, 493 A.2d 182 (1985). "Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. CT Page 12675 35 Am.Jur.2d, Forcible Entry and Detainer § 15 [1985]; see Hancockv. Finch, 126 Conn. 121, 123, 9 A.2d 811 (1939)." Id., 394. "[I]t is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There, however, must be exercised at least some actual physical control, with the intentand apparent purpose of asserting dominion. 35 Am.Jur.2d, supra, 14 [1985]." (Emphasis added.) Id.
Whether the plaintiff was in actual possession of the house in September-October, 1997, when he claims to have been dispossessed by the defendant largely a function of whether he was in actual possession before he was arrested and incarcerated for six months. Cf. Grant v. Dalliber, 11 Conn. 234 (1835) (abode of a married man is where his family resides, unless temporary and for transient purposes, and is not changed or abandoned by his imprisonment). The plaintiff appears to equate presence, residence and abode with control and dominion. While residence and abode will often be accompanied by control and dominion, this is not necessarily so. "The word `control' . . . refers to the power or authority to manage, superintend, direct or oversee." Panaroni v. Johnson,158 Conn. 92, 98, 256 A.2d 246 (1969). "Dominion" is defined as "[c]ontrol. Ownership. The rights of dominion or property are those rights which a man may acquire in and to such external things as are unconnected with his person." Ballentine's Law Dictionary
(1969), p. 370. Here, not only did the plaintiff not have any lease or occupancy agreement with his mother[2]; she threw him out of the house at her will and with the plaintiff's apparent acquiescence. The plaintiff resided in the house at his mother's pleasure. Apart from this, the plaintiff points to his having performed some repairs on the house. While this is some evidence of dominion and control, the plaintiff has not proven by a fair preponderance of the evidence that he did, in fact, exercise "actual physical control" over the house — "the power or authority to manage, superintend, direct or oversee" — "with the intent and apparent purpose of asserting dominion." Cf. Catropa v. Bargas,17 Conn. App. 285, 289-290, 551 A.2d 1282, cert. denied, 210 Conn. 811,556 A.2d 609 (1989). This finding is also informed by logic, common sense, practical considerations of everyday life, and societal customs, standards and practices with respect to occupancy arrangements between a parent who owns or leases a dwelling unit and an adult child residing in the dwelling unit without a rental agreement, especially an adult child who is drug dependent. Cf.Bourque v. Morris, 190 Conn. 364, 369, 460 A.2d 1261 (1983)("The issue must be decided upon the basis of reasonable inferences to be drawn from the circumstances of the transaction between" the CT Page 12676 parties). The plaintiff's mother need not have brought a civil action to remove him from her house and neither need the defendant have done so after the plaintiff's release from prison.
Judgment may enter for the defendant.
BY THE COURT
Bruce L. LevinJudge of The Superior Court