[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 RE MOTION FOR SUMMARY JUDGMENT (No. 111)
The Plaintiff, Kimberly Koonce ("Koonce"), slipped and fell on premises subject to a lease. She sued the landlord and not the tenant. The defendant landlord, W.E.F. Associates, L.L.C. ("W.E.F."), has now moved for summary judgment, claiming that it had no possession and control of the premises in question. For the reasons briefly set forth below, I conclude that W.E.F. is correct.
Koonce alleges in her revised complaint that on November 29, 1995, she was injured by falling on a parking lot that was defective because it was covered with ice and snow. W.E.F. owned the lot, and Koonce claims that it controlled the lot as well. She commenced this action, which names W.E.F. as the sole defendant, in 1997. On March 23, 1999, W.E.F. filed the motion for summary judgment now before the Court. The motion was heard on June 15, 1999.
Koonce asserts in her objection to W.E.F.'s motion that there are genuine issues as to material fact with respect to the control of the premises in question. Koonce has declined, however, to file any opposing affidavits or other documentary evidence in support of her objection. See Practice Book §17-45. Under these circumstances, there is no genuine issue of material fact. Koonce's arguments are essentially based on her CT Page 6568 interpretation of the lease, discussed below. The proper construction of a lease, however, is a question of law for the Court. Koonce conceded at the hearing that her arguments are, ultimately, legal rather than factual in nature. Under these circumstances, the issue between the parties must be resolved by a proper construction of the lease.
The lease in question was executed in 1994 by W.E.F., the landlord, and Atrium Plaza Health Care Center, Inc., the tenant. It contains numerous provisions, but only those provisions relied upon by the parties here need be described.
Sec. 5.01 provides that the tenant will not place any sign on the premises without obtaining the landlord's written consent. The tenant agrees to maintain any such sign in good condition.
Sec. 6.01 provides in relevant part as follows:
 From and after the commencement of the term of this lease, Tenant shall have exclusive possession and control of, and responsibility for, the Leased Premises and the public ways adjacent to the Leased Premises. Tenant, at its own expense, shall keep the leased premises, including all improvements that may from time to time be thereon, neat and clean and in good repair, order and condition and shall promptly make all necessary repairs thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, and foreseen and unforeseen. The therm "repairs" shall include all necessary replacement and renewals. . . . The Landlord shall not under any circumstances be required to furnish any services or make any repairs or alterations in or to the Leased Premises, the Tenant hereby assuming the full and sole responsibility for the condition, operation, repair, replacement, maintenance and management of the Leased Premises.
 Sec. 6.03 provides that, "If Tenant refuses or neglects to make any such repair or
replacement required of it pursuant to [§ 6.01] . . . Landlord may make such repairs or replacements."
Sec. 17.01 provides that the landlord "shall have the right to enter the Leased Premises . . . to examine the same . . . and to make such repairs, alterations, improvements or additions as CT Page 6569 Landlord may deem advisable or necessary. . . . Nothing herein contained, however, shall be deemed or construed to impose upon Landlord any obligation, responsibility or liability whatsoever for the care, maintenance, or repair of the Leased Premises."
Sec. 18.02 provides that, "Landlord shall not be liable for any injury or damage to persons or property resulting from . . . water, rain, or snow, or by any other cause of whatsoever nature.
"[T]he common law imposes on landlords only a duty to maintain in a reasonably safe condition those areas of their premises over which they exercise control." Gore v. People'sSavings Bank, 235 Conn. 360, 375, 665 A.2d 1341 (1995). Analysis of the question of control ordinarily begins with an examination of the lease. If control of the premises in question "is definitely expressed in the lease," the terms of the lease will be determinative. Panaroni v. Johnson, 158 Conn. 92, 98,256 A.2d 246 (1969). If the lease contains no such definite expression, the question will be determined by the circumstances of the particular case. Id.
Control of the premises is definitely expressed" in the lease in question here. Under § 6.01, the tenant has "exclusive possession and control of, and responsibility for" the premises. Moreover, under the same section, the tenant assumes "the full and sole responsibility" for the maintenance of the premises. When these provisions are combined with § 18.02, which waives the landlord's liability for injury resulting from snow, it is clear that the tenant has full control over the premises and full responsibility for the removal of snow.
The landlord's reservation of its rights to control signs on the premises (§ 5.01), to make "repairs or replacements" that the tenant refuses or neglects to make (§ 6.03), and to enter the premises to examine them and make such repairs (§ 17.01) does not change this analysis. As Panaroni v. Johnson explains, "an agreement between the parties as to the landlord's right to inspect the premises together with his exclusive right to makerepairs therein and the tenant's total abstention from makingany repairs would be the equivalent of retention of control of the leased premises." 158 Conn. at 98. (Emphasis added.) The provisions of the lease, quoted supra, make it clear that the lease does not give the landlord an "exclusive right to make repairs" and it does not require the tenant to totally abstain from making any repairs. Under these circumstances, it is the CT Page 6570 tenant, and not the landlord, that retains control of the leased premises. As Prosser notes, since the landlord "has no power to exclude any one, or to direct the use of the land . . . it is difficult to see how his privilege to enter differs in any significant respect from that of any carpenter hired to do the work." PROSSER AND KEETON ON THE LAW OF TORTS § 63 at 444 (5th ed. 1984). See RESTATEMENT (SECOND) OF TORTS § 357 cmt. b(1). In any event, the removal of snow cannot be described as a "repair," as that term is defined in § 6.01 of the lease. It is clear that the landlord has in no way contracted to remove ice and snow.
Under these circumstances, W.E.F. had no control of the premises and, consequently no duty to third parties such as Koonce to maintain the premises in a reasonably safe condition. Its motion for summary judgment must be granted.
Jon C. Blue, Judge of the Superior Court